OPINION *Page 2 
{¶ 1} Plaintiffs-appellants, Anthony Kirtos, Virginia Kulik, and Attorney Angela Mikulka, appeal from a Mahoning County Common Pleas Court judgment denying a motion for a protective order which would prohibit defendant-appellee, Nationwide Insurance Company, from taking Attorney Mikulka's deposition.
 {¶ 2} This case stems from a 1997 motor vehicle accident in which Kirtos and Kulik were injured. Kulik was a passenger in Kirtos's car. At the time of the accident, Kirtos was insured by an automobile insurance policy issued by Nationwide. The policy provided medical payments (med-pay) coverage of $5,000 per person. Both Kirtos and Kulik submitted med-pay claims to Nationwide, which it paid.
 {¶ 3} Throughout this litigation, Mikulka has represented Kirtos and Kulik.
 {¶ 4} Kirtos and Kulik later filed a complaint against Nationwide on November 6, 2002, for bad faith and breach of contract. They alleged the following.
 {¶ 5} At the time of paying their claims, Nationwide required Kirtos and Kulik to execute a subrogation agreement assigning it all of their claims. Nationwide later renewed its subrogation notice and sought repayment from the proceeds of the responsible party or his insurance carrier. The tortfeasor involved in the accident with Kirtos and Kulik was also a Nationwide insured.
 {¶ 6} Kirtos and Kulik asserted six claims: (1) Nationwide improperly attempted to subrogate against its own insured in bad faith; (2) Nationwide demanded subrogation from them in bad faith after they had already assigned the med-pay interest to Nationwide; (3) Nationwide, in bad faith, failed to pursue repayment directly from the tortfeasor pursuant to the subrogation agreement; (4) Nationwide failed to act in good faith by demanding payment of its subrogation interest from Kirtos and Kulik from settlement amounts it knew represented less than fair value of their claims; (5) Nationwide failed to act in good faith when it refused to waive payment of its subrogation claim in light of the insufficient amount of the settlement offers it made; and (6) Nationwide refused to and/or failed to process and pay Kulik for med-pay claims she submitted on March 27, 2002, in breach of *Page 3 
contract.
 {¶ 7} Nationwide filed a counterclaim against Kirtos and Kulik alleging that they had failed to reimburse it for money it paid under the med-pay provision after recovering from the tortfeasor.
 {¶ 8} Both parties filed motions for partial summary judgment. The trial court granted summary judgment to Kirtos and Kulik on Nationwide's counterclaim. It also denied Kirtos and Kulik summary judgment on their breach of contract claim, finding that genuine issues of material fact surrounded this claim.
 {¶ 9} Nationwide also orally moved the court to disqualify Mikulka and her law firm as Kirtos's and Kulik's counsel. It alleged that it would need to call Mikulka as a witness in this case to testify regarding conversations she had with its representatives during settlement negotiations. The trial court held this motion in abeyance and has not yet ruled on it.
 {¶ 10} On March 30, 2007, Nationwide filed a notice to take Mikulka's deposition. In response, Kirtos and Kulik filed a motion for a protective order to prohibit Nationwide from deposing their counsel. They argued that Mikulka is not a party to the action, Mikulka's testimony is barred by the attorney-client privilege and the work product doctrine, and Nationwide is attempting to cause undue expense to them. They also asserted that the trial court was required to conduct a hearing to determine whether Nationwide's intended questioning would lead to any admissible evidence. Finally, they argued that Nationwide was trying to force Mikulka to withdraw from the case and the notice to depose her was in furtherance of Nationwide's motion to disqualify her. Nationwide responded by arguing that Mikulka is a material witness in this case because the case centers around the settlement negotiations where Mikulka was a key player.
 {¶ 11} In a one-line entry, the trial court overruled appellants' motion for a protective order. Appellants filed a timely notice of appeal on June 13, 2007.
 {¶ 12} Preliminarily, it should be mentioned that in a September 17, 2007 journal entry, we determined that this case presents a final, appealable order: *Page 4 
Whether the trial court properly denied the motion for a protective order.
 {¶ 13} Appellants raise six assignments of error, all alleging that the trial court erred in denying the motion for a protective order.
 {¶ 14} Civ.R. 26(C) deals with protective orders. It provides in part:
 {¶ 15} "Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, * * *; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into or that the scope of the discovery be limited to certain matters * * *." Civ.R. 26(C).
 {¶ 16} On appeal, we review a trial court's order granting or denying a motion for a protective order for an abuse of discretion. Ruwe v.Board of Tp. Trustees of Springfield Tp. (1987), 29 Ohio St.3d 59, 61,505 N.E.2d 957. Abuse of discretion constitutes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. With this standard in mind, we move on to consider appellants' assignments of error.
 {¶ 17} Appellants' first assignment of error states:
 {¶ 18} "THE TRIAL COURT ERRED IN DENYING THE MIKULKA MOTION FOR PROTECTIVE ORDER, ON THE GROUND THAT THE ATTORNEY-CLIENT PRIVILEGE PRECLUDES HER DEPOSITION."
 {¶ 19} Appellants argue that the trial court should have granted the motion for protective order based on the attorney-client privilege as set out in R.C. 2317.02(A)(1):
 {¶ 20} "An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may *Page 5 
testify by express consent of the client * * *. However, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject."
 {¶ 21} Appellants argue that neither Kirtos and Kulik nor Mikulka has waived the attorney-client privilege.
 {¶ 22} The only matters protected by the attorney-client privilege are those involving communications between the attorney and the client.State v. Hoop (1999), 134 Ohio App.3d 627, 640, 731 N.E.2d 1177, citingUpjohn Co. v. United States (1981), 449 U.S. 383, 395-96, 101 S.Ct. 677,66 L.Ed.2d 584, Hickman v. Taylor (1947), 329 U.S. 495, 508,67 S.Ct. 385, 91 L.Ed. 451. "Conversations between the attorney and a third party, as well as the underlying facts of a case, are not privileged." Id.
 {¶ 23} Here, it does not appear that Nationwide is attempting to solicit any communications made between Kirtos/Kulik and Mikulka. It seems that Nationwide is attempting to solicit from Mikulka facts surrounding her settlement negotiations with its agents. However, some of these communications may still be protected by the attorney-client privilege or, in the alternative, the work-product doctrine.
 {¶ 24} The work-product doctrine protects from disclosure all materials an attorney prepares in anticipation of trial, including notes, documents, or memoranda prepared by the attorney or his representatives. Id., citing Upjohn, 449 U.S. at 397-98,Hickman, 329 U.S. at 511, United States v. Nobles (1975), 422 U.S. 225,237-38, 95 S.Ct. 2160, 45 L.Ed.2d 141.
 {¶ 25} Since Nationwide seeks to question Mikulka regarding her settlement negotiations, it is possible that some of the information it is seeking is protected by the work-product doctrine. However, Mikulka will have an opportunity to assert the attorney-client and work-product protections if and when Nationwide asks her questions regarding information that she believes is protected. At that time in her deposition, Mikulka can object and the matter will be left to the trial court to rule on. *Page 6 
Accordingly, appellants' first assignment of error is without merit.
 {¶ 26} Appellants' second assignment of error states:
 {¶ 27} "THE TRIAL COURT ERRED IN DENYING THE MIKULKA MOTION FOR PROTECTIVE ORDER, ON THE GROUND THAT THE NOTICE OF DEPOSITION TO HER WAS IMPROPER."
 {¶ 28} Here, appellants argue that Nationwide improperly attempted to obtain Mikulka's testimony by simply giving notice that it was going to depose her. Appellants assert that the "notice" rule only applies to parties. Since Mikulka is not a party, appellants argue that Nationwide could not "notice" her for a deposition.
 {¶ 29} Civ.R. 30 addresses depositions. Pursuant to Civ.R. 30(A) and (B), one may compel the attendance of a party deponent by the use of a notice of examination including the deponent's name and address and the time and place of the deposition. However, the Rule further provides that one may compel the attendance of a witness deponent by the use of a subpoena as provided for under Civ.R. 45. Civ.R. 30(A).
 {¶ 30} In this case, Nationwide did not serve Mikulka with a subpoena. Instead, it simply issued a notice of deposition, as it would if she were a party.
 {¶ 31} But Mikulka is not a party to the bad faith/breach of contract case. She is Kirtos's and Kulik's attorney. Nationwide contends Mikulka is a material witness. Consequently, Nationwide should have served her with a subpoena as it would any other witness, instead of merely issuing a notice of deposition. Mikulka has no obligation or duty to respond to Nationwide's notice of deposition. However, Nationwide can easily cure this error by serving Mikulka with a subpoena.
 {¶ 32} Thus, appellants' second assignment of error has merit. However, the finding of merit here does not result in the reversal of the trial court's denial of the protective order. It does not go to the issue at hand of whether the trial court abused its discretion in denying the protective order. Instead, it lends further support to affirming the trial court's judgment because Mikulka could not be compelled to attend the deposition since she was never subpoenaed to do so. *Page 7 
 {¶ 33} Appellants' third assignment of error states:
 {¶ 34} "THE TRIAL COURT ERRED IN DENYING THE MIKULKA MOTION FOR PROTECTIVE ORDER, ON THE GROUND THAT THE APPELLANTS AND MIKULKA WOULD BEAR UNDUE COSTS AND EXPENSES."
 {¶ 35} Appellants contend here that if Nationwide were permitted to depose Mikulka, she would incur extraordinary expenses in determining whether Nationwide could take her deposition, hiring her own personal counsel for the deposition, and retaining other counsel to represent Kirtos and Kulik at the deposition.
 {¶ 36} Mikulka may likely be a material witness in this case. In a case of bad faith regarding whether an insurer negotiated with its insured in bad faith, evidence as to the settlement negotiations is highly relevant. The insurer cannot be denied the opportunity to discover potentially significant information simply because counsel may have to disqualify herself or incur added expenses. Accordingly, appellants' third assignment of error is without merit.
 {¶ 37} Appellants' fourth assignment of error states:
 {¶ 38} "THE TRIAL COURT ERRED IN DENYING THE MIKULKA MOTION FOR PROTECTIVE ORDER, ON THE GROUND THAT MIKULKA WAS LIMITED BY ETHICAL CONSTRAINTS AND LIMITATIONS."
 {¶ 39} Appellants assert that the trial court should have addressed the ethical issues Mikulka would face by being deposed and whether Nationwide's questioning would attempt to force her to violate an ethical duty to her clients. They cite to the Ohio Rules of Professional Conduct, which provide the circumstances under which a lawyer may reveal information relating to the representation of a client including *Page 8 
information protected by the attorney-client privilege.[1]
 {¶ 40} The same reasoning applies here as in appellants' first assignment of error. Some of the information Nationwide seeks may be protected. If it is, then Mikulka may not be forced to reveal it. However, this issue will not arise until Mikulka is actually deposed and objects to specific questions. At that time, the trial court can determine if the information Nationwide seeks is protected.
 {¶ 41} Accordingly, appellants' fourth assignment of error is without merit.
 {¶ 42} Appellants' fifth assignment of error states:
 {¶ 43} "THE TRIAL COURT ERRED IN DENYING THE MIKULKA MOTION FOR PROTECTIVE ORDER, ON THE GROUND THAT NATIONWIDE IS SEEKING TO ANNOY, EMBARRASS, OPPRESS, HARASS AND INTIMIDATE MIKULKA IN HER REPRESENTATION IN THIS AND OTHER CASES AND APPEARS TO BE SEEKING DISQUALIFICATION OF MIKULKA."
 {¶ 44} Appellants assert that this is not the only case involving Nationwide as a defendant in an insurance bad faith action where Mikulka represents the plaintiffs. *Page 9 
They argue that because the trial court did not rule on Nationwide's motion to disqualify Mikulka, Nationwide decided to force the issue by filing a notice to depose Mikulka. Appellants assert that Nationwide has done this in an attempt to harass Mikulka, as her attention is now focused on the deposition issue instead of the bad faith claims.
 {¶ 45} Appellants can point to no evidence on the record that Nationwide is trying simply to harass Mikulka. It is entirely possible that Mikulka possesses information that is material to the claims at hand and that Nationwide is entitled to this information. Accordingly, appellants' fifth assignment of error is without merit.
 {¶ 46} Appellants' sixth assignment of error states:
 {¶ 47} "THE TRIAL COURT ERRED IN FAILING TO HOLD A COURT HEARING ON THE MOTION FOR PROTECTIVE ORDER."
 {¶ 48} Appellants assert that the trial court should have held a hearing to determine whether Nationwide's intended questioning would result in any admissible evidence. Additionally, appellants contend that at a hearing on the issue, the trial court could have determined exactly what information Nationwide was seeking and determined if the information was available by some other means.
 {¶ 49} Appellants contend that Nationwide is seeking privileged information and/or work product from Mikulka and that Nationwide could obtain the information it seeks from other sources. But Nationwide contends that the information it seeks is not privileged and cannot be obtained from other sources.
 {¶ 50} In this case, it was not necessary for the trial court to hold a hearing. To do so would have been somewhat hasty. First, as stated above, as it stands now Mikulka has no duty to appear for a deposition because she has not been subpoenaed. Second, until Nationwide takes Mikulka's deposition and asks her questions that may be protected by the attorney-client privilege or the work-product doctrine, the issue as to whether the information is protected is premature. Thus, appellants' sixth assignment of error is without merit.
 {¶ 51} For the reasons stated above, the trial court's judgment is hereby *Page 10 
affirmed.
Vukovich, J., concurs. DeGenaro, P.J., concurs.
[1] {¶ a} (a) A lawyer shall not reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by division (b) or required by division (c) of this rule.
{¶ b} "(b) A lawyer may reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, to the extent the lawyer reasonably believes necessary for any of the following purposes:
{¶ c} "(1) to prevent reasonably certain death or substantial bodily harm;
{¶ d} "(2) to prevent the commission of a crime by the client or other person;
{¶ e} "(3) to mitigate substantial injury to the financial interests or property of another that has resulted from the client's commission of an illegal or fraudulent act, in furtherance of which the client has used the lawyer's services;
{¶ f} "(4) to secure legal advice about the lawyer's compliance with these rules;
{¶ g} "(5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding, including any disciplinary matter, concerning the lawyer's representation of the client;
{¶ h} "(6) to comply with other law or a court order.
{¶ i} "(c) A lawyer shall reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, to the extent the lawyer reasonably believes necessary to comply with Rule 3.3 or 4.1." Ohio Rules of Professional Conduct 1.6. *Page 1